**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ELAINE WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, on behalf | ) |
| of its Agency, the U.S. SMALL BUSINESS | ) |
| ADMINISTRATION, | ) |
| | ) |
| **SERVE: Small Business Administration** | ) |
| 1222 Spruce Street, Suite 10.103 | ) |
| St. Louis, Missouri 63013 | )   Cause No. |
| | ) |
| **SBA Office of General Counsel** | ) |
| 409 Third Street SW | ) |
| Washington DC, 20416 | ) |
| | ) |
| **US Attorney's Office** | ) |
| 111 South 10th Street, #20.333 | ) |
| St. Louis, Missouri 63102 | ) |
| | ) |
| **US Attorney General** | ) |
| **Civil Division, Service of Process** | ) |
| **US Department of Justice** | ) |
| 10th & Constitution Avenue NW | ) |
| Washington, DC 20530 | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff Elaine Wilson ("Plaintiff"), by and through her attorney of record, and for her Complaint against Defendant United States of America, on behalf of its Agency, the U.S. Small Business Administration ("Defendant" or "SBA"), respectfully states and alleges as follows:

Preliminary Statement

1.      This is an action for declaratory judgment under 28 U.S.C. §2201, arising from Defendant's collection actions against Plaintiff for a disputed debt.

Jurisdiction

2.      This Court has subject matter jurisdiction over Plaintiff's claims asserted against Defendant United States of America, on behalf of its Agency, the U.S. Small Business Administration pursuant to 15 U.S.C. § 634(b).

3.      This is a civil action arising under the United States Constitution and the laws of the United States and, as such, this Court has jurisdiction pursuant to 28 U.S.C. §1331.

4.      To the further extent that allegations herein state a claim or claims under the laws of the State of Missouri, this Court has jurisdiction pursuant to 28 U.S.C. §1367.

Venue

5.      Plaintiff resides in this district so that venue of this case is proper in the Eastern District of Missouri under 28 U.S.C. § 1402.

6.      Divisional venue is appropriate in the Eastern Division pursuant to District Court L.R. 3-2.07(A)(3).

Parties

7.      Plaintiff Elaine Wilson, is, and at all times mentioned in this Complaint was, a resident of Jefferson County, Missouri, within the jurisdiction of this Court.

8.      Defendant U.S. Small Business Administration is an agency of the United States of America.

Allegations Common to All Counts

9.      On or about September 20, 2008, Diamond Wall Midwest, Inc., Elam Road

2

Holding Company, LLC, and A & M Manufacturing And Distribution, LLC (collectively, the "Borrower") executed a Secured Business Disaster Loan (the "Note") evidencing a loan by the SBA (as "Lender") in the original principal amount of $463,300.00 (the "Loan"). A true and accurate copy of the Note is attached hereto as **Exhibit 1** and incorporated herein as if more fully set forth.

10.     In addition, a Loan Authorization and Agreement ("Loan Authorization") was executed by Plaintiff, among other parties, granting the SBA a security interest in certain collateral of the Borrower, including Plaintiff's residence. A true and accurate copy of the Loan Authorization is attached hereto as **Exhibit 2** and incorporated herein as if more fully set forth.

11.     The Note is guaranteed by an Unconditional Guarantee (the "Guarantee") executed by Plaintiff, among other guarantors, guaranteeing the payment of all amounts owing under the Note. A true and accurate copy of the Guaranty is attached hereto as **Exhibit 3** and incorporated herein as if more fully set forth.

12.     Prior to June 2011, Borrower ceased operations and defaulted on the Note.

13.     On June 19, 2011, Defendant declared all unpaid indebtedness immediately due and payable under the Note and made written demand upon Plaintiff for payment under the Guaranty (the "SBA Demand Letter"). A true and accurate copy of the SBA Demand Letter is attached hereto as **Exhibit 4** and incorporated herein as if more fully set forth.

14.     Since June 19, 2011, Plaintiff has not acknowledged the indebtedness under the Note or Guaranty, nor has she made voluntary payments toward the indebtedness under the Note.

<u>Count I – 28 U.S.C. § 2201(a)</u>

15.     Plaintiff re-alleges and incorporates herein by reference each of the allegations contained and set forth in the above paragraphs of her Complaint as though fully set forth herein.

16.     Pursuant to RSMo §516.150, an action to foreclose a deed of trust shall not be maintained after such obligation has been barred by the statutes of limitations of Missouri.

17.     Upon information and belief, Defendant's cause of action upon the Guaranty began to accrue on June 19, 2011, if not earlier.

18.     Since June 19, 2011, the statute of limitations has not been tolled.

19.     Subsequently, any action against Plaintiff on account of the Guaranty is barred by the ten-year statute of limitations proscribed by RSMo §516.110.

20.     Plaintiff requests a judicial determination as to the rights and obligations of the Parties with respect to Defendant's ability to collect a debt for which judicial action is already time barred by the ten-year statute of limitations.

21.     In particular, Plaintiff seeks an Order of this Court acknowledging that Defendant is barred from collecting from Plaintiff any amounts owed under the Note.

22.     Defendant disputes that it is barred from collection of such debt by reason of application of the Missouri statute of limitations.

23.     Accordingly, pursuant to 28 U.S.C. § 2201(a), an actual legal and substantial controversy thus exists between the parties within this Court's jurisdiction as to whether Defendant is barred from collecting against Plaintiff any amounts due under the Note and/or Guaranty.

WHEREFORE, Plaintiff Elaine Wilson prays this Court make and enter its Order: (a) finding that an actual legal and substantial controversy exists between the parties, (b) declaring that any potential collection action by the SBA against Plaintiff under the Note and Guaranty is time-barred, (c) further ordering and directing that Defendant be forever barred from engaging in any collection action against Plaintiff for any amounts allegedly owed pursuant to

the Note and Guaranty, and (d) for any such other and further relief as the Court deems just and proper.

Respectfully submitted,

CARMODY MACDONALD P.C.

By: /s/ *Robert E. Eggmann*
     ROBERT E. EGGMANN, #37374MO
     KELLEN M.C. CUSHING, #74620MO
     120 S. Central Ave., Suite 1800
     St. Louis, Missouri 63105
     (314) 854-8600
     Fax No. (314)854-8660
     ree@carmodymacdonald.com
     kcc@carmodymacdonald.com

ATTORNEYS FOR PLAINTIFF ELAINE WILSON

## SBA
U.S. Small Business Administration

### U.S. Small Business Administration
# NOTE
(SECURED DISASTER LOANS)

| | |
|---|---|
| Date: September 20, 2008 | |
| Loan Amount: $463,300.00 | |
| Annual Interest Rate: 4.000% | |

Application # ████8353          Loan # ████60-04

1. **PROMISE TO PAY:** In return for a loan, Borrower promises to pay to the order of SBA the amount of **Four Hundred Sixty-Three Thousand Three Hundred And 00/100** Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2. **DEFINITIONS: A)** "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note. **B)** "Guarantor" means each person or entity that signs a guarantee of payment of this Note. **C)** "LoanDocuments" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

3. **PAYMENT TERMS:** Borrower must make all payments at the place SBA designates. Borrower may prepay this Note in part or in full at any time, without notice or penalty. Borrower must pay principal and interest payments of **$2,255.00** every month beginning **Five (5)** months from the date of the Note. SBA will apply each installment payment first to pay interest accrued to the day SBA receives the payment and will then apply any remaining balance to reduce principal. All remaining principal and accrued interest is due and payable **Thirty (30) years** from the date of the Note.

4. **DEFAULT:** Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower: **A)** Fails to comply with any provision of this Note, the Loan Authorization and Agreement, or other Loan Documents; **B)** Defaults on any other SBA loan; **C)** Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; **D)** Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; **E)** Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; **F)** Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay this Note; **G)** Fails to pay any taxes when due; **H)** Becomes the subject of a proceeding under any bankruptcy or insolvency law; **I)** Has a receiver or liquidator appointed for any part of their business or property; **J)** Makes an assignment for the benefit of creditors; **K)** Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay this Note; **L)** Dies; **M)** Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or, **N)** Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay this Note.

5. **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: **A)** Require immediate payment of all amounts owing under this Note; **B)** Have recourse to collect all amounts owing from any Borrower or Guarantor; **C)** File suit and obtain judgment; **D)** Take possession of any Collateral; or, **E)** Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: **A)** Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; **B)** Collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; **C)** Release anyone obligated to pay this Note; **D)** Compromise, release, renew, extend or substitute any of the Collateral; and **E)** Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. **FEDERAL LAW APPLIES:** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. **GENERAL PROVISIONS: A)** All individuals and entities signing this Note are jointly and severally liable. **B)** Borrower waives all suretyship defenses. **C)** Borrower must sign all documents required at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral. **D)** SBA may exercise any of its rights separately or together, as many times and in any order it chooses. SBA may delay or forgo enforcing any of its rights without giving up any of them. **E)** Borrower may not use an oral statement of SBA to contradict or alter the written terms of this Note. **F)** If any part of this Note is unenforceable, all other parts remain in effect. **G)** To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that SBA did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale. **H)** SBA may sell or otherwise transfer this Note.

9. **MISUSE OF LOAN FUNDS:** Anyone who wrongfully misapplies any proceeds of the loan will be civilly liable to SBA for one and one-half times the proceeds disbursed, in addition to other remedies allowed by law.

**EXHIBIT**

1

8353/ DLB ████ 60-04
Diamond Wall Midwest, Inc. et al

10.  **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

Corporate Seal

<u>Corporate Execution</u>

Elam Road Holding Company, LLC

By: _____
Tom Wilson, Manager

By: _____
Elaine Wilson, Manager

A & M Manufacturing And Distribution, L.L.C.

By: _____
Tom Wilson, Member

By: _____
Elaine Wilson, Member

Diamond Wall Midwest, Inc.

By: _____
Tom Wilson, President

By: _____
Elaine Wilson, Secretary

SBA FORM  147 B  (5-00)

Page 2 of 2



**EXHIBIT**

**2**

Application # ▮▮▮8353
Secured Business Disaster Loan

## U. S. Small Business Administration

## LOAN AUTHORIZATION AND AGREEMENT

Date: <u>September 11, 2008</u>

On the above date, this Administration (SBA) authorized (under Section 7(b) of the Small Business Act, as amended) a Loan (Loan Number <u>DLB ▮▮▮60-04</u>) to <u>Diamond Wall Midwest, Inc., Elam Road Holding Company, LLC and A & M Manufacturing And Distribution, L.L.C.</u> (Borrower) of <u>106 S Elam Av, Valley Park, MO 63088</u> in the amount of <u>Four Hundred Sixty-Three Thousand Three Hundred And 00/100 ($463,300.00) Dollars</u> upon the following conditions:

1. <u>PAYMENT TERMS</u>

   A. Interest will accrue at the rate of <u>4%</u> per annum; installment payments, including principal and interest, of <u>Two Thousand Two Hundred Fifty-Five And 00/100 ($2,255.00)</u> Dollars monthly, will begin <u>Five (5)</u> months from the date of the promissory Note. The balance of principal and interest will be payable <u>Thirty (30) years</u> from the date of the promissory Note.

   B. Each payment will be applied first to interest accrued to the date of receipt of each payment, and the balance, if any, will be applied to principal.

   C. Each payment will be made when due even if at that time the full amount of the Loan has not yet been advanced or the authorized amount of the Loan has been reduced.

   D. Interest will accrue only on funds actually advanced from the date(s) of each advance.

2. <u>COLLATERAL</u>

   Borrower will provide the following collateral:

   A. Deed of Trust/Mortgage on real estate located at <u>106 S Elam Ave, Valley Park, MO 63088</u>. Said Deed of Trust/Mortgage to be subject only to the following:

      (1) Trust Deed/Mortgage held by <u>Regions Bank, PO Box 18001, Hattiesburg, MS 39404</u> with a current approximate balance of $<u>1,759,900.00</u>.

      (2) Trust Deed/Mortgage held by <u>L.G. Monnig, Inc., 1314 Kendron Dr, Saint Louis, MO 63131</u> with a current approximate balance of $<u>58,700.00</u>.

   B. Security Interest in <u>Inventory, Fixtures, Accounts Receivable and Machinery and Equipment (excluding automotive)</u>, now owned, hereafter acquired, or purchased in whole or in part from the proceeds of this Loan, and/or the proceeds of any disposition thereof.

   C. Security Interest in <u>Inventory, Accounts Receivable and Machinery and Equipment (excluding automotive)</u>, now owned, hereafter acquired, or purchased in whole or in part from the proceeds of this Loan, and/or the proceeds of any disposition thereof.

3. <u>GUARANTEE</u>

   Borrower will provide the following guarantee(s):

   A. Guarantor will provide a guarantee on SBA Form 2128 of <u>Tom Wilson</u> of <u>4212 Hansard Ln, Hillsboro, MO 63050</u>.

8353 / DLB███60-04
Diamond Wall Midwest, Inc. , Et Al

B.  Guarantor will provide a guarantee on SBA Form 2128 of <u>Elaine Wilson</u> of <u>4212 Hansard Ln, Hillsboro, MO 63050</u>.

C.  Guarantor will provide a guarantee on SBA Form 2128 of <u>A.R.W. Enterprises, L.L.C.</u> of <u>19269 N State Hwy 21, Cadet, MO 63630</u>, secured by the following collateral:

    (1)  Deed of Trust/Mortgage on real estate located at <u>19269 N. State Hwy 21  Cadet, MO 63630</u>.  Said Deed of Trust/Mortgage to be subject only to the following:

        (a)  Trust Deed/Mortgage held by <u>Meramec Valley Bank  35 Marshall Rd  Valley Park, MO 63088</u> with a current approximate balance of <u>$86,800.00</u>.

D.  Guarantor will provide a guarantee on SBA Form 2128 of <u>Tom Wilson Trust Dated August 29, 2000</u> of <u>4212 Hansard Ln, Hillsboro, MO 63050</u>, secured by the following collateral:

    (1)  Deed of Trust/Mortgage on real estate located at <u>4212 Hansard Ln  Hillsboro, MO 63050</u>.  Said Deed of Trust/Mortgage to be subject only to the following:

        (a)  Trust Deed/Mortgage held by <u>Meramec Valley Bank  35 Marshall Rd  Valley Park, MO 63088</u> with a current approximate balance of <u>$230,000.00</u>.

        (b)  Trust Deed/Mortgage held by <u>Citi Mortgage  PO Box 790001  Saint Louis, MO 63179</u> securing a line of credit with a maximum limit of <u>$66,900.00</u> and with a current approximate balance of <u>$63,600.00</u>.

E.  Guarantor will provide a guarantee on SBA Form 2128 of <u>Elaine Wilson Trust Dated August 29, 2000</u> of <u>4212 Hansard Ln, Hillsboro, MO 63050</u>, secured by the following collateral:

    (1)  Deed of Trust/Mortgage on real estate located at <u>4212 Hansard Ln  Hillsboro, MO 63050</u>.  Said Deed of Trust/Mortgage to be subject only to the following:

        (a)  Trust Deed/Mortgage held by <u>Meramec Valley Bank  35 Marshall Rd  Valley Park, MO 63088</u> with a current approximate balance of <u>$230,000.00</u>.

        (b)  Trust Deed/Mortgage held by <u>Citi Mortgage  PO Box 790001  Saint Louis, MO 63179</u> securing a line of credit with a maximum limit of <u>$66,900.00</u> and with a current approximate balance of <u>$63,600.00</u>.

4.  <u>REQUIREMENTS RELATIVE TO COLLATERAL</u>

A.  Borrower will submit to SBA evidence of SBA's recorded lien position and of payment of appropriate fees prior to the disbursement of Loan funds in excess of $10,000. Such evidence will be in a form satisfactory to SBA Counsel and will be at Borrower's expense.

B.  Borrower will not sell or transfer any collateral (except normal inventory turnover in the ordinary course of business) described in paragraph 2 hereof without the prior written consent of SBA.

C.  Borrower will neither seek nor accept future advances under any superior liens on the collateral securing this Loan without prior written consent of SBA.

5.  <u>USE OF LOAN PROCEEDS</u>

Borrower will use the proceeds of this Loan solely to rehabilitate or replace property of Borrower located at <u>106 S Elam Ave Valley Park, MO 63088 and 106 S Elam Ave Valley Park, MO 63088</u>, damaged or destroyed by disaster occurring in the month of <u>March, 2008</u>.  Borrower will apply all Loan proceeds to the following specific uses:

A.  Approximately <u>$6,000.00</u> to repair/replace disaster damaged furniture and fixtures.



B.   Approximately $96,800.00 to repair/replace disaster damaged leasehold improvements located at 106 S Elam Ave, Valley Park, MO  63088.

C.   Approximately $ 800.00 to repair/replace disaster damaged furniture and fixtures.

D.   Approximately $2,100.00 to install disaster mitigation measures/devices in accordance with plans previously approved by SBA.

E.   Approximately $44,600.00 to repair/replace disaster damaged leasehold improvements located at 106 S Elam Ave, Valley Park, MO  63088.

F.   Approximately $63,500.00 for moving expenses.

G.   Approximately $7,800.00 as payment on account(s) payable to Kirchner Block & Brick.

H.   Approximately $4,700.00 as payment on account(s) payable to Bussen Quarries, Inc.

I.   Approximately $220,300.00 for working capital to alleviate economic injury caused by disaster occurring March 2008.

J.   Approximately $16,700.00 as payment on account(s) payable to Mike Terry Enterprises.


6.   REQUIREMENTS FOR USE OF LOAN PROCEEDS AND RECEIPTS

A.   Borrower will obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement.  Prior to each subsequent disbursement (if any) and whenever requested by SBA, Borrower will submit to SBA such itemization together with copies of the receipts.

B.   Borrower will make the damaged, repaired or replacement property(ies) available to SBA for inspection and verification of the use of Loan proceeds when so requested.

C.   Borrower will return to SBA, as soon as possible but not later than 1 year from the date of final disbursement, all funds received but not used for disaster repairs as authorized by the above paragraph.  Funds so returned will be used to reduce the outstanding balance of this Loan and will not be applied in lieu of scheduled payments.

D.   Borrower will not use any proceeds of this Loan to pay wages or any other compensation for repair work performed by Borrower or members of Borrower's immediate family, or to pay overhead or profit for repairs performed by, or materials acquired from, a business in which Borrower owns a 50% or greater interest.

E.   Borrower will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior written permission of SBA.  The law prohibits the use of any portion of the proceeds of this Loan for voluntary relocation from the business area in which the disaster occurred.  To request SBA's prior written permission to relocate, Borrower will present to SBA the reasons therefore and a description or address of the relocation site. Determinations of (1) whether a relocation is voluntary or otherwise, and (2) whether any site other than the disaster-affected location is within the business area in which the disaster occurred, will be made solely by SBA.

F.   Borrower will, to the extent feasible, purchase only American-made equipment and products with the proceeds of this Loan.

G.   Borrower will make any request for a loan increase for additional disaster-related damages as soon as possible after the need for a loan increase is discovered.  The SBA will not consider a request for a loan increase received more than two (2) years from the date of the original Loan Authorization and Agreement unless, in the sole discretion of the SBA, there are extraordinary and unforeseeable circumstances beyond the control of the borrower.

 8353 / DLB ▮▮▮▮▮ 60-04
Diamond Wall Midwest, Inc. , Et Al

7.  DEADLINE FOR RETURN OF LOAN CLOSING DOCUMENTS

**Borrower will sign and return the loan closing documents to SBA within 2 months of the date of this Loan Authorization and Agreement.**  By notifying the Borrower in writing, SBA may cancel this Loan if the Borrower fails to meet this requirement.  The Borrower may submit and the SBA may, in its sole discretion, accept documents after 2 months of the date of this Loan Authorization and Agreement.

8.  AGREEMENT TO REMIT AND ASSIGNMENT OF COMPENSATION FROM OTHER SOURCES

A.  Eligibility for this disaster Loan is limited to disaster losses that are not compensated by other sources.  Other sources include but are not limited to: (1) proceeds of policies of insurance or other indemnifications, (2) grants or other reimbursement (including loans) from government agencies or private organizations, (3) claims for civil liability against other individuals, organizations or governmental entities, and (4) salvage (including any sale or re-use) of items of damaged property.

B.  Borrower will promptly notify SBA of the existence and status of any claim or application for such other compensation, and of the receipt of any such compensation, and Borrower will promptly submit the proceeds of same (not exceeding the outstanding balance of this Loan) to SBA.

C.  Borrower hereby assigns to SBA the proceeds of any such compensation from other sources and authorizes the payor of same to deliver said proceeds to SBA at such time and place as SBA shall designate.

D.  SBA will in its sole discretion determine whether any such compensation from other sources is a duplication of benefits.  SBA will use the proceeds of any such duplication to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

E.  Borrower will execute an assignment to SBA of the proceeds of any insurance settlement or recovery for disaster damage.  SBA will use any such insurance proceeds to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

F.  Borrower will execute an assignment to SBA of the proceeds of any Business Interruption Insurance settlement or recovery for disaster damage.  SBA will use any such insurance proceeds to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

9.  REQUIREMENTS FOR REAL ESTATE CONSTRUCTION OR REPAIR

A.  Prior to disbursement of Loan funds in excess of $10,000 for real estate construction or repair, Borrower will submit evidence satisfactory to SBA that all insurance proceeds and other funds received for disaster damages to the real estate, and any other funds necessary to complete the construction/repair project, have been spent for the repair or replacement of the disaster damaged real estate.

B.  Prior to disbursement of Loan funds in excess of $10,000 for real estate construction, Borrower will submit a copy of a valid building permit, or written evidence from proper authority that a building permit is not required.

C.  Prior to any disbursement of Loan funds for real estate construction, repair, or mitigation, Borrower will submit:

(1)  A written construction contract covering the cost of repair/construction/mitigation work satisfactory to SBA. This contract will not exceed the amount of this Loan allocated for repair or construction of real estate, unless Borrower demonstrates the availability of any additional funds needed in excess of that amount at terms satisfactory to SBA.

(2)  Written evidence that contractor(s) has builder's risk and workman's compensation insurance.

Any of the above requirements may be waived in writing by and at the discretion of SBA.  Borrower will not change any of the above without the prior written consent of SBA.



D.   Prior to any disbursement of Loan funds for real estate construction or repair, Borrower will execute and submit SBA Form 601.

E.   Borrower will not use lead-based paint on any interior surface of any residential structure, and those exterior surfaces of residential structures such as stairs, porches, windows, and doors, which are readily accessible to children under 7 years of age.  If lead-based paint is improperly used, the Borrower will be required to remove the paint and repaint the affected area at the Borrower's expense.

10.  DUTY TO MAINTAIN INSURANCE

A.   Prior to disbursement of Loan funds in excess of $10,000, Borrower will purchase hazard insurance, including fire, lightning, and extended coverage on the damaged property, including contents, and the collateral for this loan, in an amount equal to 80% of the insurable value of each property or the minimum coinsurance requirement set forth in the insurance policy provided by Borrower, whichever is greater, or such other amounts and types of coverage as SBA may require   Borrower will provide proof of such hazard insurance coverage to SBA together with an endorsement naming SBA as mortgagee or loss payee, and Borrower will maintain such coverage throughout the entire term of this Loan.

B.   **PROPERTY IS IN FLOOD HAZARD AREA.**  Prior to any disbursement of this Loan, Borrower will purchase (make application and pay the initial premium for) National Flood Insurance, or equivalent coverage, naming SBA as mortgagee or loss payee. Borrower will submit evidence of the purchase of such coverage on real estate and contents located at 106 S Elam Ave Valley Park, MO 63088.  Borrower will purchase such coverage in an amount equal to the insurable value of each property, or the maximum coverage available, whichever is less.  Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. **BORROWER WILL NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS FLOOD INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.**

11.  BOOKS AND RECORDS

A.   Borrower will maintain current and proper books of account in a manner satisfactory to SBA for the most recent 5 years until 3 years after the date of maturity, including extensions, or the date this Loan is paid in full, whichever occurs first.  Such books will include Borrower's financial and operating statements, insurance policies, tax returns and related filings, records of earnings distributed and dividends paid and records of compensation to officers, directors, holders of 10% or more of Borrower's capital stock, members, partners and proprietors.

B.   Borrower authorizes SBA to make or cause to be made, at Borrower's expense and in such a manner and at such times as SBA may require:  (1) inspections and audits of any books, records and paper in the custody or control of Borrower or others relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (2) inspections and appraisals of any of Borrower's assets.

C.   Borrower will furnish to SBA, not later than 3 months following the expiration of Borrower's fiscal year and in such form as SBA may require, Borrower's financial operating statements.

D.   Upon written request of SBA, Borrower will accompany such statements with an "Accountant's Review Report" prepared by an independent public accountant at Borrower's expense.

E.   Borrower authorizes all Federal, State and municipal authorities to furnish reports of examination, records and other information relating to the conditions and affairs of Borrower and any desired information from such reports, returns, files, and records of such authorities upon request of SBA.

8353 / DLB ████60-04
Diamond Wall Midwest, Inc. , Et Al

12. DISTRIBUTIONS AND COMPENSATION

   A.  Borrower will not, without the prior written consent of SBA, declare or pay any dividend or make any distribution upon its capital stock or corporate assets, or purchase or retire any of its capital stock, or consolidate, or merge with any other company, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company, or to any officer, director or employee of Borrower, or of any such company. A Sub-chapter S corporation may make distribution to shareholders for the payment of tax liability attributable to corporate earnings.

13. OTHER CONDITIONS

   A.  If Borrower has or intends to have employees, Borrower will post SBA Form 722, "Equal Opportunity Poster", in Borrower's place of business where it will be clearly visible to employees, applicants for employment, and the general public.

   B.  Prior to disbursement of any Loan funds, Borrower will execute and submit Certification of LLE satisfactory to SBA.

   C.  Prior to disbursement of any Loan funds, Borrower will execute and submit Board of Directors' Resolution on SBA Form 160.

   D.  Prior to disbursement of any Loan funds, Borrower will execute and submit Certification of LLE satisfactory to SBA.

   E.  Prior to disbursement of any Loan funds, Borrower will execute and submit Certification of LLE satisfactory to SBA.

   F.  Prior to disbursement of any Loan proceeds, Borrower will complete the Certification Concerning Lobbying and the Disclosure of Lobbying Activities (if appropriate), and submit the required document(s) to SBA (for Loans in excess of $150,000).

14. BORROWER'S CERTIFICATIONS

Borrower certifies that:

   A.  There has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)

   B.  No fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on SBA Form 5, "Business Disaster Loan Application"; or SBA Form 159, "Compensation Agreement". All fees not approved by SBA are prohibited.

   C.  All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan.

   D.  No claim or application for any other compensation for disaster losses has been submitted to or requested of any source, and no such other compensation has been received, other than that which Borrower has fully disclosed to SBA.

   E.  Neither the Borrower nor, if the Borrower is a business, any principal who owns at least 50% of the Borrower, is delinquent more than 60 days under the terms of any: (a) administrative order; (b) court order; or (c) repayment agreement that requires payment of child support.

8353 / DLB ████ 60-04
Diamond Wall Midwest, Inc. , Et Al

F.  Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application.  All fees not approved by SBA are prohibited.  If an Applicant chooses to employ an Agent, the compensation an Agent charges to and that is paid by the Applicant must bear a necessary and reasonable relationship to the services actually performed and must be comparable to those charged by other Agents in the geographical area.  Compensation cannot be contingent on loan approval.  In addition, compensation must not include any expenses which are deemed by SBA to be unreasonable for services actually performed or expenses actually incurred.  Compensation must not include charges prohibited in 13 CFR 103 or SOP 50-30, Appendix 1.  **If the compensation exceeds $500 for a disaster home loan or $2500 for a disaster business loan, Borrower must fill out the Compensation Agreement Form 159D which will be provided for Borrower upon request or can be found on the SBA website**.

G.  The Borrower(s) are the owner(s) of and hold legal title to certain real estate property fully described in Section 2-- Collateral.  Said premises are in my/our possession, and my/our title thereto has never been disputed or questioned as to any part thereof.  Said premises are free of all mortgages, taxes, assessments, liens, encumbrances, and claims, or interest of any other party, except as listed in Section 2 of this document.  There are no actions pending affecting said real property.

15.  CIVIL AND CRIMINAL PENALTIES

A.  Criminal Penalties:  Any person who knowingly makes a false statement or misrepresentation to SBA shall be subject to a fine of not more than $10,000 or to imprisonment for not more than 5 years, or both, under provisions of 18 U.S.C. 1001 and/or 15 U.S.C. 645.

B.  Civil Penalties:  Public Law 92-385 provides that for all disaster Loans made after August 16, 1972, anyone who wrongfully misapplies the proceeds of a disaster Loan shall be civilly liable to the Administrator in an amount equal to one and one-half times the original principal amount of the Loan.

16.  RESULT OF VIOLATION OF THIS LOAN AUTHORIZATION AND AGREEMENT

A.  If Borrower violates any of the terms or conditions of this Loan Authorization and Agreement, the Loan will be in default and SBA may declare all or any part of the indebtedness immediately due and payable.  SBA's failure to exercise its rights under this paragraph will not constitute a waiver.

B.  A default (or any violation of any of the terms and conditions) of any SBA Loan(s) to Borrower and/or its affiliates will be considered a default of all such Loan(s).

17.  DISBURSEMENT OF THE LOAN

A.  Disbursements will be made by and at the discretion of SBA Counsel, in accordance with this Loan Authorization and Agreement and the general requirements of SBA.

B.  Disbursements may be made in increments as needed.

C.  Other conditions may be imposed by SBA pursuant to general requirements of SBA.

D.  Disbursement may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition or in any other material fact represented in the Loan application, or if Borrower fails to meet any of the terms or conditions of this Loan Authorization and Agreement.

E.  **NO DISBURSEMENT WILL BE MADE LATER THAN 6 MONTHS FROM THE DATE OF THIS LOAN AUTHORIZATION AND AGREEMENT UNLESS SBA, IN ITS SOLE DISCRETION, EXTENDS THIS DISBURSEMENT PERIOD.**

 8353 / DLB ▓▓▓▓ 60-04
Diamond Wall Midwest, Inc. , Et Al

18. PARTIES AFFECTED

    A.  This Loan Authorization and Agreement will be binding upon Borrower and Borrower's successors and assigns and will inure to the benefit of SBA and its successors and assigns.

19. DATE

    A.  This Loan Authorization and Agreement is approved and issued on <u>September 11, 2008</u>.

<div style="margin-left:30%">

Acting Administrator
Sandy K. Baruah

_Herbert P Mitchell_

Herbert L. Mitchell
Associate Administrator
U.S. Small Business Administration
</div>

The undersigned agree(s) to be bound by the terms and conditions herein during the term of this Loan, and further agree(s) that no provision stated herein will be waived without prior written consent of SBA.

<div style="margin-left:30%">

Elam Road Holding Company, LLC

By: _____    _____
Tom Wilson, Manager             Date

By: _____    _____
Elaine Wilson, Manager           Date

A & M Manufacturing and Distribution, L.L.C.

By: _____    _____
Tom Wilson, Member             Date

By: _____    _____
Elaine Wilson, Member           Date

Diamond Wall Midwest, Inc.

By: _____    _____
Tom Wilson, President          Date

By: _____    _____
Elaine Wilson, Secretary        Date
</div>

<u>Note</u>:  Corporate Borrowers must execute Loan Authorization and Agreement in corporate name, by a duly authorized officer, and seal must be affixed and duly attested;  partnership Borrowers must execute in firm name, together with signature of a general partner.  Limited liability entities must execute in the entity name by the signature of the authorized managing person.

# INSTRUCTIONS FOR
# LOAN AUTHORIZATION AND AGREEMENT

**READ CAREFULLY**.  This document describes the terms and conditions of your loan and many of your future responsibilities.  Your signature represents your agreement to comply with the terms of this agreement.

This document is pre-dated at the top of the first page. DO NOT CHANGE THE DATE ON THIS DOCUMENT.

**SIGN** on the line above your typed name.  Sign your name EXACTLY as it appears.  If there is an error in the spelling of your name, please notify this office. Insert the current date after your signature(s).

**RETURN** the entire original signed document to SBA.  **No disbursement will be made until SBA has received the completed form.**

Your copy is with those marked "Borrower's Copies". Retain your copy for future reference.

**CORPORATION**.   President and Secretary must sign. AFFIX corporate seal, if you have one.  Return the complete original signed document to SBA.

## GUARANTEE

**The Guarantee** is to be signed by the person(s) who is to guarantee your loan.

This document is pre-dated.  DO NOT CHANGE THE DATE ON THIS DOCUMENT.

**Sign the original** EXACTLY  as your name appears. If there is an error in the spelling of your name, please notify this office.

DO  NOT  AFFIX  CORPORATE  SEAL  UNLESS GUARANTOR IS A CORPORATION.

Return the original document to SBA.  Give one copy to the Guarantor.  Borrower's copy is enclosed with documents marked "Borrower's Copies".

**Return To**:

Small Business Administration
14925 Kingsport Road
Ft. Worth, TX 76155-2243

**EXHIBIT**

**3**

# **GUARANTEE**

**The Guarantee** is to be signed by the person(s) who is to guarantee your loan.

This document is pre-dated.  DO NOT CHANGE THE DATE ON THIS DOCUMENT.

**Sign the original**  EXACTLY  as your name appears. If there is an error in the spelling of your name, please notify this office.

DO NOT AFFIX CORPORATE SEAL UNLESS GUARANTOR IS A CORPORATION.

Return the original document to SBA.  Give one copy to the Guarantor.  Borrower's copy is enclosed with documents marked "Borrower's Copies".

**Return To**:

Small Business Administration
14925 Kingsport Road
Ft. Worth, TX 76155-2243



## U.S. Small Business Administration
# UNCONDITIONAL GUARANTEE
## (DISASTER LOANS)

| SBA Loan # | DLB███████60-04 |
|---|---|
| Application # | ████████8353 |
| Guarantor | Elaine Wilson |
| Borrower | Diamond Wall Midwest, Inc., Elam Road Holding Company, LLC, A & M Manufacturing And Distribution, L.L.C. |
| Date | September 20, 2008 |
| Note Amount | $463,300.00 |

1. **GUARANTEE:**

   Guarantor unconditionally guarantees payment to SBA of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when SBA makes written demand upon Guarantor. SBA is not required to seek payment from any other source before demanding payment from Guarantor.

2. **NOTE:**

   The "Note" is the promissory note dated <u>September 20, 2008</u> in the principal amount of <u>Four Hundred Sixty-Three Thousand Three Hundred And 00/100</u> Dollars, from Borrower to SBA. It includes any assumption, renewal, substitution, or replacement of the Note.

3. **DEFINITIONS:**

   "Collateral" means property, if any, taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

4. **SBA'S GENERAL POWERS:**

   SBA may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

   A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

   B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

   C. Release any Borrower or any guarantor of the Note;

   D. Compromise or settle with the Borrower or any guarantor of the Note;

   E. Substitute or release any of the Collateral, whether or not SBA receives anything in return;

   F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

8353 / DLB    60-04
Diamond Wall Midwest, Inc. et al

G.  Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

H.  Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against SBA.

5.  **FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.  **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

I.  Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after SBA disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after SBA disposes of it.

J.  Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

K.  Guarantor waives defenses based upon any claim that:

1) SBA failed to obtain any guarantee;

2) SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) SBA or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) SBA impaired the Collateral;

6) SBA did not dispose of any of the Collateral;

7) SBA did not conduct a commercially reasonable sale;

8) SBA did not obtain the fair market value of the Collateral;

9) SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) SBA made errors or omissions in Loan Documents or administration of the Loan;

12) SBA did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) SBA impaired Guarantor's suretyship rights;

SBA FORM 2128 (5-00)

 8353 / DLB      60-04
Diamond Wall Midwest, Inc. et al

14) SBA modified the Note terms, other than to increase amounts due under the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) SBA has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral, if any, pledged by Guarantor to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes successors, and SBA includes successors and assigns.

9. **GENERAL PROVISIONS:**

L.   ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

M.   SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

N.   JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

O.   DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.

P.   FINANCIAL STATEMENTS. Guarantor must give SBA financial statements as SBA requires.

Q.   SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.

R.   ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

S.   SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

I.   CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

10. **GUARANTOR ACKNOWLEDGMENT OF TERMS.**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

11. **GUARANTOR NAME(S) AND SIGNATURE(S):**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_____

Elaine Wilson



# U.S. Small Business Administration
# UNCONDITIONAL GUARANTEE
# (DISASTER LOANS)

| SBA Loan # | DLB█████60-04 |
|---|---|
| Application # | █████8353 |
| Guarantor | Tom Wilson |
| Borrower | Diamond Wall Midwest, Inc., Elam Road Holding Company, LLC, A & M Manufacturing And Distribution, L.L.C. |
| Date | September 20, 2008 |
| Note Amount | $463,300.00 |

1. **GUARANTEE:**

   Guarantor unconditionally guarantees payment to SBA of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when SBA makes written demand upon Guarantor. SBA is not required to seek payment from any other source before demanding payment from Guarantor.

2. **NOTE:**

   The "Note" is the promissory note dated September 20, 2008 in the principal amount of Four Hundred Sixty-Three Thousand Three Hundred And 00/100 Dollars, from Borrower to SBA.  It includes any assumption, renewal, substitution, or replacement of the Note.

3. **DEFINITIONS:**

   "Collateral" means property, if any,  taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

4. **SBA'S GENERAL POWERS:**

   SBA may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

   A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

   B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;

   C.  Release any Borrower or any guarantor of the Note;

   D.  Compromise or settle with the Borrower or any guarantor of the Note;

   E.  Substitute or release any of the Collateral, whether or not SBA receives anything in return;

   F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;




8353 / DLB ███ 60-04
Diamond Wall Midwest, Inc. et al

    G.   Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

    H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against SBA.

5.   **FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

   I.   Guarantor waives all rights to:
1) Require presentment, protest, or demand upon Borrower;
2) Redeem any Collateral before or after SBA disposes of it;
3) Have any disposition of Collateral advertised; and
4) Require a valuation of Collateral before or after SBA disposes of it.

   J.   Guarantor waives any notice of:
1) Any default under the Note;
2) Presentment, dishonor, protest, or demand;
3) Execution of the Note;
4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
5) Any change in the financial condition or business operations of Borrower or any guarantor;
6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
7) The time or place of any sale or other disposition of Collateral.

   K.   Guarantor waives defenses based upon any claim that:
1) SBA failed to obtain any guarantee;
2) SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
3) SBA or others improperly valued or inspected the Collateral;
4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;
5) SBA impaired the Collateral;
6) SBA did not dispose of any of the Collateral;
7) SBA did not conduct a commercially reasonable sale;
8) SBA did not obtain the fair market value of the Collateral;
9) SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) SBA made errors or omissions in Loan Documents or administration of the Loan;
12) SBA did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
13) SBA impaired Guarantor's suretyship rights;



8353 / DLB      60-04
Diamond Wall Midwest, Inc. et al

14) SBA modified the Note terms, other than to increase amounts due under the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) SBA has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral, if any, pledged by Guarantor to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes successors, and SBA includes successors and assigns.

9. **GENERAL PROVISIONS:**

L.  ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

M.  SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

N.  JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

O.  DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.

P.  FINANCIAL STATEMENTS. Guarantor must give SBA financial statements as SBA requires.

Q.  SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.

R.  ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

S.  SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

I.  CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

10. **GUARANTOR ACKNOWLEDGMENT OF TERMS.**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

11. **GUARANTOR NAME(S) AND SIGNATURE(S):**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_____
Tom Wilson



U.S. Small Business Administration
# Unconditional Guarantee
## (Disaster Loans)

| SBA Loan # | DLB█████60-04 |
|---|---|
| Application # | █████8353 |
| Guarantor | Tom Wilson Trust Dated August 29, 2000 |
| Borrower | Diamond Wall Midwest, Inc., Elam Road Holding Company, LLC, A & M Manufacturing And Distribution, L.L.C. |
| Date | September 20, 2008 |
| Note Amount | $463,300.00 |

1. **GUARANTEE:**

   Guarantor unconditionally guarantees payment to SBA of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when SBA makes written demand upon Guarantor. SBA is not required to seek payment from any other source before demanding payment from Guarantor.

2. **NOTE:**

   The "Note" is the promissory note dated <u>September 20, 2008</u> in the principal amount of <u>Four Hundred Sixty-Three Thousand Three Hundred And 00/100</u> Dollars, from Borrower to SBA. It includes any assumption, renewal, substitution, or replacement of the Note.

3. **DEFINITIONS:**

   "Collateral" means property, if any, taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

4. **SBA'S GENERAL POWERS:**

   SBA may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

   A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

   B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

   C. Release any Borrower or any guarantor of the Note;

   D. Compromise or settle with the Borrower or any guarantor of the Note;

   E. Substitute or release any of the Collateral, whether or not SBA receives anything in return;

   F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;


8353 / DLB ▮▮▮ 60-04
Diamond Wall Midwest, Inc. et al

    G.   Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

    H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against SBA.

5.    **FEDERAL LAW:**

    When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations.  SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.    **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

    To the extent permitted by law,

    I.   Guarantor waives all rights to:

        1)   Require presentment, protest, or demand upon Borrower;

        2)   Redeem any Collateral before or after SBA disposes of it;

        3)   Have any disposition of Collateral advertised; and

        4)   Require a valuation of Collateral before or after SBA disposes of it.

    J.   Guarantor waives any notice of:

        1)   Any default under the Note;

        2)   Presentment, dishonor, protest, or demand;

        3)   Execution of the Note;

        4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

        5)   Any change in the financial condition or business operations of Borrower or any guarantor;

        6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

        7)   The time or place of any sale or other disposition of Collateral.

    K.   Guarantor waives defenses based upon any claim that:

        1)   SBA failed to obtain any guarantee;

        2)   SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

        3)   SBA or others improperly valued or inspected the Collateral;

        4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

        5)   SBA impaired the Collateral;

        6)   SBA did not dispose of any of the Collateral;

        7)   SBA did not conduct a commercially reasonable sale;

        8)   SBA did not obtain the fair market value of the Collateral;

        9)   SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

       10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;

       11)  SBA made errors or omissions in Loan Documents or administration of the Loan;

       12)  SBA did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

       13)  SBA impaired Guarantor's suretyship rights;

8353 / DLB ▮▮▮▮60-04
Diamond Wall Midwest, Inc. et al

14) SBA modified the Note terms, other than to increase amounts due under the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) SBA has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL:**
   Guarantor will preserve the Collateral, if any, pledged by Guarantor to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**
   Under this Guarantee, Guarantor includes successors, and SBA includes successors and assigns.

9. **GENERAL PROVISIONS:**
   L. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

   M. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

   N. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

   O. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.

   P. FINANCIAL STATEMENTS. Guarantor must give SBA financial statements as SBA requires.

   Q. SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.

   R. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

   S. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

   I. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

10. **GUARANTOR ACKNOWLEDGMENT OF TERMS.**
    Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

11. **GUARANTOR NAME(S) AND SIGNATURE(S):**
    By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

    Tom Wilson Trust Dated August 29, 2000

    By: _____

    Tom Wilson, Trustee



## U.S. Small Business Administration
# UNCONDITIONAL GUARANTEE
# (DISASTER LOANS)

| SBA Loan # | DLB██████60-04 |
|---|---|
| Application # | ██████8353 |
| Guarantor | A.R.W. Enterprises, L.L.C. |
| Borrower | Diamond Wall Midwest, Inc., Elam Road Holding Company, LLC, A & M Manufacturing And Distribution, L.L.C. |
| Date | September 20, 2008 |
| Note Amount | $463,300.00 |

1. **GUARANTEE:**

   Guarantor unconditionally guarantees payment to SBA of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when SBA makes written demand upon Guarantor. SBA is not required to seek payment from any other source before demanding payment from Guarantor.

2. **NOTE:**

   The "Note" is the promissory note dated September 20, 2008 in the principal amount of Four Hundred Sixty-Three Thousand Three Hundred And 00/100 Dollars, from Borrower to SBA. It includes any assumption, renewal, substitution, or replacement of the Note.

3. **DEFINITIONS:**

   "Collateral" means property, if any, taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

4. **SBA'S GENERAL POWERS:**

   SBA may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

   A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

   B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

   C. Release any Borrower or any guarantor of the Note;

   D. Compromise or settle with the Borrower or any guarantor of the Note;

   E. Substitute or release any of the Collateral, whether or not SBA receives anything in return;

   F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;



8353 / DLB █████ 60-04
Diamond Wall Midwest, Inc. et al

G.   Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against SBA.

5.   **FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

I.   Guarantor waives all rights to:

1)   Require presentment, protest, or demand upon Borrower;

2)   Redeem any Collateral before or after SBA disposes of it;

3)   Have any disposition of Collateral advertised; and

4)   Require a valuation of Collateral before or after SBA disposes of it.

J.   Guarantor waives any notice of:

1)   Any default under the Note;

2)   Presentment, dishonor, protest, or demand;

3)   Execution of the Note;

4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5)   Any change in the financial condition or business operations of Borrower or any guarantor;

6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7)   The time or place of any sale or other disposition of Collateral.

K.   Guarantor waives defenses based upon any claim that:

1)   SBA failed to obtain any guarantee;

2)   SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3)   SBA or others improperly valued or inspected the Collateral;

4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5)   SBA impaired the Collateral;

6)   SBA did not dispose of any of the Collateral;

7)   SBA did not conduct a commercially reasonable sale;

8)   SBA did not obtain the fair market value of the Collateral;

9)   SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11)  SBA made errors or omissions in Loan Documents or administration of the Loan;

12)  SBA did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13)  SBA impaired Guarantor's suretyship rights;

8353 / DLB ████ 60-04
Diamond Wall Midwest, Inc. et al

14) SBA modified the Note terms, other than to increase amounts due under the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) SBA has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.  **DUTIES AS TO COLLATERAL:**
    Guarantor will preserve the Collateral, if any, pledged by Guarantor to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

8.  **SUCCESSORS AND ASSIGNS:**
    Under this Guarantee, Guarantor includes successors, and SBA includes successors and assigns.

9.  **GENERAL PROVISIONS:**
    L.  ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.
    M.  SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.
    N.  JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.
    O.  DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.
    P.  FINANCIAL STATEMENTS. Guarantor must give SBA financial statements as SBA requires.
    Q.  SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.
    R.  ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.
    S.  SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.
    I.  CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

10. **GUARANTOR ACKNOWLEDGMENT OF TERMS.**
    Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

11. **GUARANTOR NAME(S) AND SIGNATURE(S):**
    By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

    A.R.W. Enterprises, L.L.C.
    By: _____
    Tom Wilson, Member
    By: _____
    Elaine Wilson, Member



### U.S. Small Business Administration
# UNCONDITIONAL GUARANTEE
## (DISASTER LOANS)

| SBA Loan # | DLB ▇▇▇60-04 |
|---|---|
| Application # | ▇▇▇8353 |
| Guarantor | Elaine Wilson Trust Dated August 29, 2000 |
| Borrower | Diamond Wall Midwest, Inc., Elam Road Holding Company, LLC, A & M Manufacturing And Distribution, L.L.C. |
| Date | September 20, 2008 |
| Note Amount | $463,300.00 |

1. **GUARANTEE:**

   Guarantor unconditionally guarantees payment to SBA of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when SBA makes written demand upon Guarantor. SBA is not required to seek payment from any other source before demanding payment from Guarantor.

2. **NOTE:**

   The "Note" is the promissory note dated September 20, 2008 in the principal amount of Four Hundred Sixty-Three Thousand Three Hundred And 00/100 Dollars, from Borrower to SBA.  It includes any assumption, renewal, substitution, or replacement of the Note.

3. **DEFINITIONS:**

   "Collateral" means property, if any,  taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

4. **SBA'S GENERAL POWERS:**

   SBA may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

   A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

   B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

   C.   Release any Borrower or any guarantor of the Note;

   D.   Compromise or settle with the Borrower or any guarantor of the Note;

   E.   Substitute or release any of the Collateral, whether or not SBA receives anything in return;

   F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;



8353 / DLB      60-04
Diamond Wall Midwest, Inc. et al

G.  Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

H.  Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against SBA.

5.  **FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.  **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

I.  Guarantor waives all rights to:

   1)  Require presentment, protest, or demand upon Borrower;

   2)  Redeem any Collateral before or after SBA disposes of it;

   3)  Have any disposition of Collateral advertised; and

   4)  Require a valuation of Collateral before or after SBA disposes of it.

J.  Guarantor waives any notice of:

   1)  Any default under the Note;

   2)  Presentment, dishonor, protest, or demand;

   3)  Execution of the Note;

   4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

   5)  Any change in the financial condition or business operations of Borrower or any guarantor;

   6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

   7)  The time or place of any sale or other disposition of Collateral.

K.  Guarantor waives defenses based upon any claim that:

   1)  SBA failed to obtain any guarantee;

   2)  SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

   3)  SBA or others improperly valued or inspected the Collateral;

   4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

   5)  SBA impaired the Collateral;

   6)  SBA did not dispose of any of the Collateral;

   7)  SBA did not conduct a commercially reasonable sale;

   8)  SBA did not obtain the fair market value of the Collateral;

   9)  SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

   10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

   11) SBA made errors or omissions in Loan Documents or administration of the Loan;

   12) SBA did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

   13) SBA impaired Guarantor's suretyship rights;



**U.S. SMALL BUSINESS ADMINISTRATION**

06/19/11

Dear Borrower:

This is official notice that U.S. Small Business Administration ("SBA") intends to refer you to the U.S. Department of the Treasury ("Treasury") as a delinquent borrower or loan guarantor.  By law, federal agencies such as SBA are required to refer delinquent debtors to Treasury for offset of federal or state payments and other collection actions if their debts become 180 days past due. **If your debt has been discharged in bankruptcy or you recently filed bankruptcy and the automatic bankruptcy stay is in effect, please disregard this notice and notify SBA's Offset Representative at the address set forth below as soon as possible.**

The debt you owe to the SBA is now seriously delinquent.  If you do not pay your delinquent debt or take other action described below **BEFORE 60 DAYS FROM THE DATE THIS NOTICE WAS MAILED** (which is the date on the notice), SBA will refer your debt to Treasury, and Treasury may add interest and charge collection fees on your unpaid debt as provided by law.

**What is offset?**  Once your delinquent debt is submitted for offset, Treasury or a state may reduce or withhold any of your eligible federal or state payments, as appropriate, for application against your delinquent debt owed to SBA.  Payments eligible for offset include but are not limited to the following:

- Your federal or state income tax refunds;
- Your federal or state contractor or vendor payments;
- Your federal or state benefit payments, such as Social Security payments.

**What else may happen?**  Treasury may also report you to credit bureaus, providing them with information about your delinquent obligation including your name, address, social security number, loan amount, account status and payment history.  Credit bureaus may retain negative credit information for 7-10 years, possibly preventing you from obtaining future loans.  Also, you may be prevented from receiving additional federal financial assistance because of your delinquent debt.

**What can you do to avoid referral to Treasury?**  You must do one of the following within 60 days from the date this notice was mailed (the date on the notice):

- **REPAY YOUR DEBT:**  Send payment in full to SBA, Denver CO 80259 or use www.pay.gov to pay your debt. The amount you owe and your loan number are indicated on your enclosed payment notice.  <u>You must include your loan number or taxpayer identification number on your check or money order to ensure proper credit.</u>

**EXHIBIT**

4

- **AGREE TO A REPAYMENT PLAN:** If you are unable to pay your debt in full, you must write or call SBA's loan servicing center in Santa Ana, CA which is handling your loan, agree to an acceptable repayment plan and make payments required under the plan. You may contact:

  **Offset Representative**
  **U.S. Small Business Administration**
  **200 West Santa Ana Boulevard, Suite 180**
  **Santa Ana, CA 92701-2820**

  **PHONE: 714-550-9566**

- **REQUEST A REVIEW OF THE DEBT:** Prior to the referral of your debt to Treasury for offset, you may (1) make a written request for a copy of SBA's records related to your debt; (2) request a review of SBA's claim that you owe this debt. If you want a review or copy of your records, you must submit a written request to the above address and it must be received within sixty (60) days from the date this notice was mailed (the date on the notice). If you believe that all or part of your debt is not delinquent or cannot legally be collected, you must send copies of cancelled checks, SBA letters or other satisfactory evidence of debt resolution.

**What if you file a joint income tax return?** You should contact the IRS before filing your tax return and ask about the steps you must take to protect the share of your income tax refund that may be payable to your spouse if he/she is not a delinquent federal debtor. You should request Form 8379, Injured Spouse Allocation, from the IRS before filing your return and follow the instructions for the form.

**If you have any questions about this notice or your rights, you should call SBA immediately at 714-550-9566 and discuss your situation with SBA's Offset Representative. This is the only notice you will receive before your delinquent debt is sent to Treasury.**

If you make or provide any false or misleading statements, representations or evidence to SBA or Treasury, you may be liable for penalties under the False Claims Act (31 U.S.C. § 3729-3731) or other statutes, and/or criminal penalties under 18 U.S.C. § 286, 287, 1001 and 1002, or other applicable law.

Sincerely,

**U.S. SMALL BUSINESS ADMINISTRATION**

Mon Jun 20 2011 08:29:43 GA.pcl 56



**U.S. SMALL BUSINESS ADMINISTRATION**

LOAN NUMBER:  ██████6004      WILSON, ELAINE                          06/19/11

| PAYMENT DUE DATE | INSTALLMENT AMOUNT | AMOUNT NOW DUE |
|---|---|---|
| 11/20/10 | 0.00 | 459567.55 |

| DATE OF LAST PAYMENT | AMOUNT OF LAST PAYMENT | AMOUNT TO PRINCIPAL | AMOUNT TO INTEREST | PRESENT PRINCIPAL BALANCE |
|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| **PAYMENT ADDRESS ONLY**<br><br>**Small Business Administration<br>PO Box 740192<br>Atlanta GA 30374-0192** |
|---|

**DIRECT QUESTIONS AND CORRESPONDENCE TO THIS ADDRESS.
DO NOT MAIL PAYMENTS TO THIS ADDRESS.**

Small Business Administration
200 W SANTA ANA BLVD STE 180
SANTA ANA CA 92701
Phone:  714 550-9566

YOU MUST IMMEDIATELY FOLLOW THE INSTRUCTIONS IN THE ENCLOSED
OFFICIAL NOTICE CONCERNING POSSIBLE U.S. TREASURY COLLECTION
ACTIONS FOR YOUR DELINQUENT GOVERNMENT DEBT. THE FULL PAYMENT OF
YOUR DELINQUENT DEBT WILL STOP ANY ADVERSE COLLECTION ACTIONS.

Or you must immediately contact by mail or by phone the SBA
OFFSET REPRESENTATIVE at the address and phone number IN THE
ENCLOSED OFFICIAL NOTICE to arrange for an acceptable payment
plan, which will also stop any adverse collection actions.

---



○ MAKE PAYABLE TO: SMALL BUSINESS ADMINISTRATION
○ SEND YOUR PAYMENT TO THE *PAYMENT ADDRESS* LISTED ABOVE
○ PLEASE RETURN THIS PORTION OF STATEMENT WITH YOUR PAYMENT
○ PUT LOAN NUMBER ON ALL PAYMENTS TO ENSURE YOUR ACCOUNT IS CREDITED PROPERLY
○ DO NOT SEND CASH
○ DO NOT USE TAPE, PAPER CLIPS OR STAPLES

06/19/11

| LOAN NUMBER | DUE DATE | INSTALLMENT AMOUNT | AMOUNT NOW DUE | AMOUNT ENCLOSED |
|---|---|---|---|---|
| ██████6004 | 11/20/10 | 0.00 | 459567.55 | |

☐ PLEASE CHECK HERE AND COMPLETE THE *BACK OF THIS FORM* IF YOUR ADDRESS HAS CHANGED.
☐ PLEASE CHECK HERE IF YOUR PHONE NUMBER HAS CHANGED AND CONTACT YOUR *SERVICING OFFICE* LISTED ABOVE.

#BWNDPZY
#CDGAECGEACEADJ4#  56   0946

WILSON, ELAINE
4212 HANSARD LN
HILLSBORO MO 63050-3617

PAYMENT AMOUNT      _____

ADDITIONAL PRINCIPAL AMT   _____

TOTAL AMOUNT ENCLOSED      _____

██████6004 ██████████7550 4

**PAYMENTS.** SBA does not consider loan payments to have been made until SBA has actually received them at one of our collection centers. Payments must be made in U.S. dollars. For electronic payments, schedule your payments to arrive on or before the due date. For non-electronic payments, mail your payment and coupon to the address listed on your billing notice. Postal delays do not waive interest charges accruing on past due accounts - you must allow adequate time for mail service.

**ON-LINE PAYMENTS.** Electronic payments can be made to SBA by using the US Treasury's web portal http://www.pay.gov . Payments can be made by a debit to your checking or savings account, or by use of either a debit or credit card.

**PREAUTHORIZED DEBIT.** To ensure that payments are made when due, arrangements can be made with most banks to debit the obligor's checking or savings account for the amount of the SBA payment.

1. **Regular Payments.** In this method, payments are automatically deducted as they come due. The obligor can stop the process at any time.

This method of payment requires prior approval by SBA. For details, call your SBA servicing office at the number shown on the front of this Payment Notice. Payments made this way are credited to the loan on the day they are deducted from the obligor's account.

**HOW INTEREST IS CALCULATED AND APPLIED.** Interest is calculated on the outstanding principal balance at the rate stated on the front of this Payment Notice using a 365-day year. Payments are applied first to accrued interest as of the date of receipt, and the balance, if any, to principal. For that reason, an obligor can save a considerable amount of money over the life of a loan by paying a "few days" early as opposed to a "few days" late.

**RETURNED CHECKS.** The full face amount of a returned check is added back to the principal balance of the loan. This amount can be sizable, resulting in a significant unpaid loan balance at the loan's scheduled maturity date.

**PREPAYMENT.** Most SBA loans may be paid in full at any time without penalty.

**DEFAULT.** In the event of default, SBA is authorized by the loan documents and/or Federal Debt Collection Legislation, may take any and all of the following actions to protect the interests of the Government:

1. Foreclose on any real and/or personal property securing either the loan or the liability of any co-obligors or guarantors and will add to the loan balance collection costs incurred by SBA or entities working with SBA, including contractors and other federal agencies.

2. Report the delinquent status of the account to credit bureaus and to state and Federal agencies.

3. Refer the account to private collection agencies for collection activity against the borrower and/or any co-obligors or guarantors.

4. Offset any future Federal income tax refunds payable to the borrower and/or any co-obligors or guarantors.

5. Offset many types of Federal contract payments or benefits, including postal, social security, civil service, and military salary or retirement payable to the borrower and/or any co-obligors or guarantors.

6. Refer the matter to the U.S. Department of Justice for appropriate legal action against the borrower and/or any co-obligors or guarantors.

7. Declare the debt as "income" and report it to the Internal Revenue Service for collection of Federal income taxes thereon.

8. Use the name and/or tax identification number of the borrower and/or any co-obligors or guarantors in computer matching efforts with other Federal agencies for debt collection and screening purposes.

**HAZARD INSURANCE AND PROPERTY TAXES.** Maintenance of adequate hazard/flood insurance and prompt payment of property taxes on all assets pledged to SBA is a BORROWER RESPONSIBILITY. Failure to do so may be considered a default under the terms of the loan.

↑ Detach here and return lower portion with your remittance.   Save upper portion for your records.   ↑

## CHANGE OF ADDRESS INFORMATION

LOAN # _____

STREET _____

CITY _____

STATE _____   ZIP _____

PHONE (____) _____